**In the Matter of O'DANNY BOY, INC., Debtor.**

**GENERAL DISCOUNT CORPORATION, Plaintiff,**

v.

**O'DANNY BOY, INC., Robert E. Haas, Kathleen M. Haas.**

**Bankruptcy No. 3–83–00751.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 25, 1984.

---

606

Peter J. Strauss, Cincinnati, Ohio, for Credit, GDC.

Harold Jarnicki, Lebanon, Ohio, for debtor.

## ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

Presently before the Court is General Discount Corporation's [GDC] August 17, 1984, motion that debtor, O'Danny Boy, Inc., be held in contempt for failure ·to follow its confirmed Chapter 11 Plan of Reorganization. The Court heard this matter on September 6, 1984. The attorneys for both parties stressed the urgency for an immediate decision; the Court requested briefs within one week (by September 13, 1984). GDC filed its brief on September 14, 1984; debtor belatedly responded on September 24, 1984.

On April 1, 1983, O'Danny Boy, Inc. filed a voluntary petition for relief under Chapter 11. In its schedules, O'Danny Boy listed GDC as a secured creditor for $369,000 on four undisputed loans, which are secured by various "vans, semis and trailers." The Security Agreements for these loans include the following language:

> The proceeds of any sale or other disposition of any of the Collateral shall be applied first, to the payment of the reasonable costs and expenses of such sale or disposition and the reasonable compensation of Secured Party and its counsel; second, any surplus then remaining to the payment of particular Obligations in such order and manner as Secured Party may in its sole discretion determine; and third, any surplus then remaining to Debtor.

On July 26, 1983, GDC filed a complaint for relief from stay. The parties settled this matter and submitted a Settlement Agreement which was approved by the Court on November 4, 1983. The Agreement stated in pertinent part,

> "4. On April 23, 1984, O'Danny Boy shall recommence payments of the Indebtedness pursuant to the terms and

conditions set forth in the original contracts between the parties....

\*      \*      \*      \*      \*      \*

"5. In the event any payment required hereunder is not paid within forty days from the date on which such payment is due, O'Danny Boy shall deliver to GDC all collateral securing the Indebtedness, including the collateral particularly described in the first through sixth claims for relief set forth in the Complaint (the "Collateral") as well as the Vehicle, and GDC shall be permitted to dispose of all such Collateral and the Vehicle pursuant to the remedies provided to secured parties under the Uniform Commercial Code (as the same may then be in effect in Ohio). GDC will be permitted to repossess all of said Collateral and the Vehicle and dispose of same all without further proceedings or appearances in the Bankruptcy Court or without further order of the Bankruptcy Court."

Debtor's "Disclosure Statement"[1] filed on October 3, 1983, placed GDC in Class 2 "Secured Creditors with Impaired Value of Collateral." As to GDC, the Statement read:

"(C) *General Discount Corporation* —Four separate loans. Security 1970 Chevrolet Step Vans, 1 1974 International Harvester Truck Trailer, 1 1971 International Harvester Truck Trailer, 1 1960 International Harvester Tow Truck, 1 1979 Freightliner Tanden Axel [sic] Truck Trailer, 1 1979 American Freezer Trailer, 1 1972 Fruehauf Freezer Trailer and 1 1969 16 Ft. Refrigerator Truck Trailer—approximate balance on all of the loans combined $116,000. $1500.00 cash to be paid on or before September 25, 1983. In addition, $500.00 to be paid direct to the creditor outside of the Plan at the end of each month, beginning the end of October, 1983, and to continue until approximately May or June, 1984, when the payments on the notes as called

for in the notes, are due. The $500.00 per month to be paid until that time is to give the creditor adequate protection for depreciation, etc. Each of the four notes that were signed will be paid as is in accordance with the terms of the respective notes as each of them become due. No reduction in payments will be made on any of the notes. Again, the $500.00 per month will only be paid until May or June, 1984, when the notes become due and payable as is. In the event that the $500.00 per month payment is more than forty (40) days late, then the creditor shall have the option of immediately picking up all of their collateral without further order of the Court. In addition when the payments on the notes are due, in 1984, if any one of the payments is more than ten (10) days late, then in that instance, the creditor again will have the option of immediate pick-up of all of the vehicles without further order of the Court. The value of the collateral being held by this creditor has been appraised at approximately $106,000.

GDC voted to accept debtor's Plan of Reorganization, which was confirmed after a hearing by this Court by an order dated July 18, 1984.

As explained by GDC, and not contested, certain collateral was repossessed from which was received in April and May, 1984, approximately $72,900 from the sale of this collateral as a release price. GDC then applied these proceeds

"to reduce the principal owed by Debtor (and to the monthly payments due on one of the notes), on three (3) of the five (5) notes then outstanding and due at the time. As a result, the monthly payment due by by the Debtor O'Danny Boy, Inc, was substantially reduced on each of these notes. Furthermore, the release price funds were also applied to a fourth note, paying it off in its entirety. Credi-

---

1. The Debtor filed its Proposed Plan of Reorganization and its Disclosure Statement on the same date. The terms and apparent purposes for each document were not readily ascertainable. The operative terms of the Plan, neverthe-

less, were only incorporated into what was termed a "Disclosure Statement". In the absence of any objections to this format, the Court treated the entire presentation as a "Plan" for the purposes of confirmation.

tor GDC also applied the funds received to its then outstanding legal fees which were expended in seeking to protect and preserve its claim against Debtor O'Danny Boy, Inc."

On August 17, 1984, GDC filed this motion which alleges that debtor had missed seven payments in June and July, 1984, on the four notes. Although no amounts were given in the motion, from the case record it is deduced that the alleged missed payments were in the following amounts: two payments of $3,738.92, two payments of $3,145.92, two payments of $3,196.17 and one payment of $3,511.25, making the total alleged default $23,673.27.

The attorneys stipulated that the total amount to be paid under the Plan in 1984 was $74,718.06 and that the total amount actually paid, including the proceeds from the sale of the collateral, was $74,900.55.

Debtor generally alleges that it is not in default, maintaining that the sale proceeds should be used to offset the total amount due under the notes. Thus, debtor maintains that GDC was paid $182.49 more than what was required under the Plan, using the above stipulated figures. The Court disagrees.

■ Sale proceeds from collateral are typically applied first to pay off the note on which the collateral was security and the costs of repossession and sale. Thus, the proceeds from the sale (the details of which were not presented to the Court) shall be credited to payment of the secured obligation(s), thus relieving debtor from making payments on only those notes that were paid off in full. If there remains a surplus after paying off the note(s) secured, that surplus can be applied to the other notes, as per the Security Agreements quoted above. So, to the extent that regular payments on unpaid notes were not made (to the maximum amount as alleged in the motion), debtor is in default. But, because of this *bona fide* dispute, no sanctions in contempt will issue at this time. *See,* O.R.C. § 1309.47 (U.C.C. 9–504).

Since GDC has failed, except in the most general terms as quoted above, to inform the court as to the details of the repossession, sale and application of the proceeds, GDC and debtor are hereby ordered to submit within 20 days of the filing of this decision a detailed accounting of such information, including the exact amounts owing under each note, which collateral was sold, which note(s) this collateral had secured, how the proceeds were specifically applied and exactly how much GDC claims to be delinquent. Debtor is then to make any defaulted payments within 20 days of the filing of the detailed joint accounting.

■ GDC has also requested attorney's fees, but has failed to offer into evidence either the total amount requested or an itemization of the nature of the work performed by its counsel (including time spent and complexity of the work). This Court will not order an undetermined amount of attorney's fees. Further, absent such crucial information, the Court is unable to determine the reasonableness of the amount requested, as required by the Security Agreement. Also, the Court notes ambiguity in GDC's memorandum reciting that the sale proceeds were "applied ... to its then outstanding legal fees...." From this language, the Court cannot determine that the "then outstanding legal fees" were incurred for other rendered services concerning this debtor. GDC's request for attorney's fees is provisionally denied.

However, if the debtor does not timely make, as herein ordered, the defaulted payments found owing per the detailed joint accounting, the Court will consider a new motion for contempt and for attorney's fees as sanctions.

GDC also seeks an affirmation from this Court that it has "the immediate right to reposses the vehicles held by Debtor against which GDC as secured creditor holds a security interest...." Both the November 4, 1984 Settlement Agreement and the October 3, 1984 Disclosure Statement fairly and adequately delineate GDC's rights as to repossession.